FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 2 0 2020

JAMES W. McCORMACK, CLERK
By: _Bud Posee_
DEP CLERK

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### DELTA DIVISION

**PEGGY BARNES,**

      **Plaintiff,**

**v.**

**COREMARK INTERNATIONAL,**

      Defendant.

**CIVIL ACTION NO.** 2:20 - CV -00231 - LPR

**JURY DEMANDED**

This case assigned to District Judge Rudofsky
and to Magistrate Judge Kearney

---

## VERIFIED COMPLAINT

---

**COMES NOW**, the above-named Plaintiff, Peggy Barnes, ("Plaintiff" or "Ms. Barnes"), by and through counsel, and hereby sets forth her Complaint for Damages against the Defendant CoreMark International. (hereinafter, "Defendant" or "CoreMark"), and states as follows:

### NATURE OF THE COMPLAINT

1.    Plaintiff brings this action against CoreMark.

2.    Plaintiff alleges that Defendant discriminated against her with regards to the terms and conditions of her employment on the basis of her sex, in retaliation for complaining about said discrimination, , in interference with her right to take FMLA leave, and in retaliation for requesting FMLA leave to tend to medical issues.

3.    Defendant terminated Ms. Barnes on or about November 7, 2018 for reporting sex discrimination, in retaliation for reporting said sex discrimination, in interference with her right to take FMLA leave, and in retaliation for requesting FMLA leave to tend to medical issues.

4.      Defendant's actions are in direct violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) and the Family Medical Leave Act of 1993, 29 U.S.C. 2615(a).

5.      Plaintiff seeks back pay, front pay, punitive damages, compensatory damages, attorneys' fees, costs, expenses, and other relief the Court deems appropriate.

## JURISDICTION AND VENUE

6.      This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under the laws of the United States, specifically, 42 U.S.C. § 2000(e) and 29 U.S.C. 2615(a).

7.      The Eastern District of Arkansas, Little Rock Division, has personal jurisdiction over Defendants because Defendants conduct business in this Judicial District.

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claim occurred in this District and because Defendant can be found in this District.

9.      Further, Plaintiff exhausted her administrative remedies through the Equal Employment Opportunity Commission and received her Notice of Right to Sue on or about August 24, 2020.

## PARTIES

10.     Plaintiff, Peggy Barnes, is an adult resident of Tipton County, Tennessee, residing at 278 Bryanna Lane, Munford, TN 38058.

11.     Plaintiff was employed by the Defendant as a Warehouse Manager at the time of her termination on November 6, 2018.

12.     Upon information and belief, Defendant, CoreMark, is a corporation formed and organized under the laws of the state of Delaware and licensed to do business in the state of Arkansas.

13.     Upon information and belief, Defendant's principal place of business is located at 1500 Solana Blvd., Building 3, Suite 3400, Westlake, TX 76262.

14.     Plaintiff worked for Defendant in its Forrest City, Arkansas location.

15.     Upon information and belief, and pursuant to Rule 4(d)(7) of the Arkansas Judiciary and Ark. Stat. Ann §25-20-202, Defendant may be served with process through its registered agent, National Registered Agents, Inc, at 124 W. Capitol Ave, Suite 1900, Little Rock, AR 72201.

## FACTUAL BACKGROUND

16.     Ms. Barnes was hired by CoreMark on February 17, 1999 as a Night Order Selector in Fort Worth, Texas.

17.     On January 3, 2000, Ms. Barnes was promoted to Lead Warehouse Nights in Fort Worth, Texas.

18.     On September 23, 2002, Ms. Barnes was promoted to Day Warehouse Supervisor.

19.     On June 26, 2006, Ms. Barnes transferred to the Plymouth, Minnesota facility as a Day Warehouse Worker.  This transfer was necessitated by Ms. Barnes' husband's job change. Mr. Barnes was Active Duty with the United States Navy.

20.     On July 24, 2006, Ms. Barnes was promoted to Warehouse Supervisor Days at the Plymouth facility.

21.     On October 22, 2007, Ms. Barnes was promoted Day Warehouse Manager at the Plymouth facility.

3

22.     In July 2009, Ms. Barnes left the company due to her husband's job change through the United States Navy.

23.     In August 2013, Ms. Barnes returned to the Plymouth, Minnesota area and was rehired by Defendant as a Night Warehouse Manager.

24.     In approximately October 2014, Ms. Barnes was promoted to Warehouse Manager, responsible for day and night shifts.

25.     In September 2015, Ms. Barnes transferred to Forrest City, Arkansas facility where her job title was Warehouse Manager.

26.     At the time of her termination, Ms. Barnes was working as Warehouse Manager in Forrest City, Arkansas.

27.     As a Warehouse Manager, Ms. Barnes was responsible for maintaining team hours, approving all company bills, ordering and buying supplies, daily operations (receiving product, RF movement, picking product, loading trucks, error rate, onboarding) and hiring and firing employees with the proper documentation.

28.     Ms. Barnes has been diagnosed with Lupus and a heart condition.

29.     She was out on FMLA approved leave from December 2017 until February 27, 2018 due to her medical conditions.

30.     Upon her return, Division President Jon Addeo and Director of Operations Daniel Wyman conducted a meeting with Ms. Barnes in regards to the operations during her absence.

31.     On February 28th, 2018 Mr. Dan Wyman, instructed Ms. Barnes that she was to move out of her individual office and into the community office.

4

32.     The given reason was because they were moving the division buyer rep into that office and that they (Jon Addeo and Dan Wyman) would also be using that office when they came to town.

33.     On May 11, 2018, Mr. Dan Wyman informed Ms. Barnes he would be conducting a 90-day performance review of Ms. Barnes.

34.     Mr. Wyman claimed he was conducting this performance review because Jon Addeo asked him to do so.

35.     As a Senior Employee, Ms. Barnes is not required to receive a performance review.

36.     In 2018, Ms. Barnes was asked to train two new male CoreMark employees, Operations Manager Chancey Dorsey and Night Supervisor Jimmy Adams.

37.     Chancey Dorsey had received some initial training in Pennsylvania prior to coming to Forrest City, Arkansas, but did not know how the Arkansas Division worked.

38.     Prior to this request, Ms. Barnes was consistently working 12-15 hour days, but found time to train the new employees as requested.

39.     Ms. Barnes trained Mr. Dorsey and Mr. Adams on many tasks that were currently part of her job duties.

40.     After they were trained, Mr. Dorsey and Mr. Adams took on many of Ms. Barnes job duties, such as payroll, daily operations and personal time off accruals.  Chancey Dorsey took over Ms. Barnes duties of Weekly Ops Meetings, Payroll, Budgeting, Approving work orders, AIB International Inspection/regulation duties, interviews and new hires. Jimmy Adams took over Ms. Barnes duties of closing out trucks, nightly employee hours and billing.

41.      On November 8, 2018, Ms. Barnes had dental surgery scheduled in Texas.  As a result, she requested two FMLA days off for this surgery, and it was approved.

42.      However, the day before her FMLA leave, on November 7, 2018, CoreMark terminated Ms. Barnes' employment.

43.      Ms. Barnes filed a charge of discrimination with the EEOC on or about May 3, 2019, alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964.

44.      The EEOC issued Ms. Barnes a Right to Sue Letter on August 24, 2020.

45.      Ms. Barnes has exhausted her administrative remedies prior to initiating the instant action with this Court.

## COUNT I
## DISCRIMINATION BASED ON SEX IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000(e), *et seq.*

46.      Ms. Barnes incorporates by reference the allegations contained in paragraphs 1-45 of her complaint as though they were fully set forth herein.

47.      Ms. Barnes is female, and therefore is a member of a protected class.

48.      Ms. Barnes suffered an adverse employment action when she was terminated from her employment with CoreMark on or about November 7, 2018.

49.      Ms. Barnes was requested by name to assume the duties of Warehouse Manager in Forrest City, AR.

50.      Ms.  Barnes was qualified for her position.

51.      Ms. Barnes held the position of Warehouse Manager for more than two years, and had received multiple promotions before she was awarded this position.

6

52.     Defendant subjected Ms. Barnes to discrimination based on her sex or gender, in violation of Title VII.

53.     Ms. Barnes suffered different and less favorable treatment by Defendant CoreMark in comparison to similarly situated male employees.

54.     Ms. Barnes was subject to a higher level of scrutiny in the form of closer supervision by her superiors and an unnecessary performance review, where her male counterparts were not subject to the same treatment.

55.     Defendant discriminated against Plaintiff by negatively impacting the terms and conditions of her employment on the basis of her sex, in violation of Title VII, when it treated male employees more favorably than female employees, and terminated Plaintiff's employment.

56.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff was injured and suffered damages because of Defendant's illegal termination of her employment.

57.     Ms. Barnes sustained substantial monetary and non-monetary damages as a result of Defendants illegal conduct, and Ms. Barnes demands such legal and equitable relief as will effectuate the purposes of Title VII, including but not limited to the following:

   a.     Compensatory damages,

   b.     Punitive damages,

   c.     Costs and attorney's fees,

   d.     Equitable relief,

   e.     Any other relief that this Court deems just and equitable.

7

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000(e), *et seq.*

58.     Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 57 as if fully set forth herein.

59.     Plaintiff engaged in protected activity within the meaning of Tile VII when she made more than one complaint about less favorable treatment by Mr. Dan Wyman to Mike Dunn, Division President, in the presence of Anna Duncan, a Human Resources representative for CoreMark..

60.     CoreMark, as Ms. Barnes' employer, knew of Ms. Barnes' exercise of her protected rights.

61.     CoreMark knew of Ms. Barnes' protected activity, because Ms. Barnes reported less favorably and discriminatory treatment by her supervisor to Mr. Dunn and Ms. Duncan, both of whom were superior to Mr. Wyman in the chain of command.

62.     Coremark subjected Ms. Barnes to an adverse employment action when it terminated her employment on or about November 7, 2018.

63.     There was a causal connection between Ms. Barnes' protected activity and the adverse employment action.

64.     Ms. Barnes can establish a causal connection between her termination and her protected activity because she was terminated months after initially issuing her complaints to Mr. Dunn and Ms. Duncan.

65.     Defendant CoreMark's actions against Ms. Barnes constitute retaliation in violation of Title VII.

8

66.     Defendant CoreMark discriminated against Ms. Barnes by negatively impacting the terms and conditions of her employment in retaliation for reporting sex discrimination in the form of less favorable treatment in comparison to her male coworkers in violation of Title VII, when it terminated Ms. Barnes' employment.

67.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff was injured and suffered damages because of Defendant's illegal termination of her employment.

68.     Ms. Barnes sustained substantial monetary and non-monetary damages as a result of Defendants illegal conduct, and Ms. Barnes demands such legal and equitable relief as will effectuate the purposes of Title VII, including but not limited to the following:

a.     Compensatory damages,

b.     Punitive damages,

c.     Costs and attorney's fees,

d.     Equitable relief,

e.     Any other relief that this Court deems just and equitable.

## COUNT III

## INTERFERENCE IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993, 28 U.S.C. 2615(a)

69.     Ms. Barnes incorporates by reference the allegations contained in Paragraphs 1-68 of her complaint as though they were fully set forth herein.

70.     Defendant willfully violated the Family Medical Leave Act, 29 U.S.C. § 2615(a)(1), by wrongfully interfering with Ms. Barnes' right to take leave granted under the Act.

71.     Ms. Barnes was an employee eligible for leave under the Family Medical Leave Act as defined under 29 U.S.C. § 2611(2)(A)(i)-(ii).

9

72.     Defendant CoreMark is an employer as defined under 29 U.S.C. § 2611(4)(A)(i).

73.     Ms. Barnes applied for Family Medical Leave Act leave and received said approval.

74.     Defendants interfered with Ms. Barnes right to be off work and retaliated against her in violation of the Family Medical Leave Act when they terminated her employment prior to her approved leave.

75.     Ms. Barnes sustained substantial monetary and non-monetary damages as a result of Defendant's illegal conduct, and Ms. Barnes demands such legal and equitable relief as will effectuate the purposes of 29 U.S.C. § 2601(a)(1), including but not limited to, the following:

        f.     Compensatory damages;

        g.     Punitive damages;

        h.     Costs and attorney's fees;

        i.     Appropriate affirmative action;

        j.     Any other relief that this Court deems just and equitable.

## COUNT IV - RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993, 28 U.S.C. 2615(a)

76.     Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 74 above, as if fully set forth herein.

77.     Defendant willfully violated Ms. Barnes' FMLA protection against retaliation, arising out of 29 U.S.C. Section 2615(a)(2).

78.     Ms. Barnes was an employee eligible for leave under the Family Medical Leave Act as defined under 29 U.S.C. § 2611(2)(A)(i)-(ii).

79.     Defendant CoreMark is an employer as defined under 29 U.S.C. § 2611(4)(A)(i).

80.     Ms. Barnes notified Defendant that she was requesting FMLA leave.

81.    Defendant had knowledge that Ms. Barnes requested FMLA leave.

82.    Ms. Barnes was approved for FMLA-protected leave beginning on November 8, 2018.

83.    Defendant retaliated against Ms. Barnes for taking advantage of her right to take leave under the FMLA when they terminated her employment on November 7, 2018.

84.    Accordingly, Defendant is liable to Ms. Barnes because they retaliated against her for requesting FMLA-protected leave.

85.    Ms. Barnes sustained substantial monetary and non-monetary damages as a result of Defendant's illegal conduct, and Ms. Barnes demands such legal and equitable relief as will effectuate the purposes of 29 U.S.C. section 2601(b)(2), including but not limited to, the following:

    a.  Compensatory damages;

    b.  Punitive damages;

    c.  Costs and attorney's fees;

    d.  Appropriate affirmative action;

    e.  Reinstatement or other equitable relief;

    f.  Accrual of back and front pay and fringe benefits; and

    g.  Any other relief that this Court deems just and equitable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.    That the Defendant be served and required to answer within the time prescribed by law;

2.    That a jury of twelve try this cause;

11

3.      That upon the hearing of this cause, the Court enter a judgment in favor of
Plaintiff and award her damages for her lost compensation from the date of Defendant's
discriminatory and retaliatory actions in an amount to be proved at trial;

4.      That the Court award Plaintiff backpay, front pay, punitive damages,
compensatory damages including but not limited to damages for emotional pain, suffering,
inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses in an
amount to be determined at trial;

5.      An award of liquidated damages;

6.      That costs and discretionary costs be taxed against Defendant;

7.      That costs, attorneys' fees, and expert witness fees be assessed against Defendant;

8.      Pre-Judgment and post-Judgment interest, as provided by law; and

9.      Any and all such other and further legal and equitable relief as this Court deems
necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to
which she has a right to jury trial.

Dated: November 20, 2020                    Respectfully submitted,

                                            Alan G. Crone, AR Bar No. 90071
                                            THE CRONE LAW FIRM, PLC
                                            88 Union Avenue, 14th Floor
                                            Memphis, TN 38103
                                            901.737.7740 (voice)
                                            901.474.7926 (fax)
                                            acrone@cronelawfirmplc.com

                                            *Attorney for Plaintiff*

12

## DECLARATION AND VERIFICATION

I, Peggy Barnes, verify and declare that the facts stated in the foregoing Verified Complaint to the best of my knowledge and belief are true, and that the Complaint is not made out of levity or by collusion with the Defendant, but in sincerity and truth for the causes mentioned in the Complaint.

_____
Peggy Barnes

Date:_____ 11 / 20 / 2020 _____

13